**2023 UT App 56**

# THE UTAH COURT OF APPEALS

RON DEMILL,
Petitioner,
*v.*
PEACE OFFICER STANDARDS AND TRAINING COUNCIL,
Respondent.

Opinion
No. 20210217-CA
Filed May 25, 2023

Original Proceeding in this Court

Jeremy G. Jones and Richard R. Willie,
Attorneys for Petitioner

Sean D. Reyes, Catherine F. Jordan, and
Stephen W. Geary, Attorneys for Respondent

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGE RYAN M. HARRIS and SENIOR JUDGE KATE APPLEBY
concurred.[1]

ORME, Judge:

¶1     During an interview regarding alleged policy violations, Utah corrections officer Ron Demill spontaneously admitted to interviewers from the Utah Department of Corrections (the UDC) that he masturbated in a staff restroom while on duty at a prison operated by the UDC. Based on his admission, the Utah Department of Public Safety, Division of Peace Officer Standards and Training (POST), pursued administrative disciplinary action against Demill, asserting that his actions violated Utah law. The POST Council (the Council) ultimately adopted the recommendation that Demill's peace officer certification be

---

1. Senior Judge Kate Appleby sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(7).

suspended for three and a half years. Demill argues that his actions were protected by a constitutional right to privacy, recognized in the Utah Administrative Code and in *Lawrence v. Texas*, 539 U.S. 558 (2003). For the reasons explained below, we decline to disturb the Council's decision.

BACKGROUND

¶2    In early 2019, the UDC initiated an internal administrative investigation and twice interviewed Demill regarding "an allegation of lewdness while at work." During one of the interviews, Demill was asked whether he had ever masturbated in front of a female co-worker or anyone else while at work. He answered the question in the negative. But then he volunteered that "there were frequent occasions where he would get so turned on by 'flirty' conversations with female co-workers that he would retreat into a staff restroom and masturbate to relieve himself." The interviewers did not address Demill's comment, nor did they ask any follow-up questions.

¶3    As a result of the interviews and Demill's spontaneous comment, the UDC sustained an allegation of unprofessional behavior and consequently issued Demill a letter of reprimand. Following issuance of the letter, Demill retained his position with the UDC.

¶4    In January 2020, POST filed its case against Demill, alleging that "[b]etween 2016 and 2019, Ron Demill violated Utah Code Ann. § 53-6-211(1)(e) by engaging in sexual conduct while on duty (masturbating in the staff restroom)."[2] Based on the "facts and

_____

2. At the time of Demill's administrative disciplinary proceeding, the specific provision of Utah law that POST believed Demill had violated appeared in Utah Code section 53-6-211(1)(f). It stated that a peace officer's certification could be revoked "if the peace

(continued…)

allegations contained in the . . . Notice of Agency Action," POST recommended that Demill's "peace officer certification be suspended for a period of four years." In response, Demill requested that the allegations against him be dismissed, and he requested a formal hearing before an administrative law judge (the ALJ).

¶5     At the hearing conducted by the ALJ, Demill did not contest his earlier admission about masturbating in a staff restroom.[3] He instead contended that given the express incorporation of *Lawrence v. Texas*, 539 U.S. 558 (2003), into the applicable administrative rule, *see* Utah Admin. Code R728-409-4(2)(b) ("The division may not investigate conduct that is limited to . . . sexual activity protected under the right of privacy recognized by the United States Supreme Court in Lawrence v. Texas, 539 U.S. 558 (2003)."), "there's no legitimate reason why what somebody does in a private bathroom should be constrained by the State." Demill argued that based on the United States Supreme Court's holding in *Lawrence*, "[t]here would have to be a legitimate State interest . . . forwarded in order for the State to apply the sexual conduct statute to someone doing something in private by themselves in a bathroom." Demill next contended that

_____

officer . . . engages in sexual conduct while on duty." The provision has since, without any substantial change, been moved to subsection 211(1)(e). *Compare* Utah Code Ann. § 53-6-211(1)(e) (LexisNexis Supp. 2022), *with id.* § 53-6-211(1)(f) (2015). We cite the current version of the annotated code for convenience and likewise have changed quotations to reflect the current subsection structure without indicating modification.

3. Although the restroom was available to all staff members, once a person was inside, the external door could be locked, ensuring a measure of privacy to the occupant. In other words, this was not a multi-stall shared restroom accessible to more than one employee at a time.

even if there was a discernible State interest, the applicable administrative rule's definition of sexual conduct "contemplates the touching of any person" and thus provides for the implicit involvement of more than one person. *See* Utah Admin. Code R728-409-3(2)(f)(i) ("'Sexual conduct' means . . . the touching of the anus, buttocks or any part of the genitals of a person . . . with the intent to arouse or gratify the sexual desire of any person regardless of the sex of any participant[.]"). Demill lastly contended that the interview questions were improper and that such questions must be "narrowly tailored" and "related to the job duties of the person being questioned." *See generally Garrity v. New Jersey*, 385 U.S. 493, 499–500 (1967) (holding that a state cannot "use the threat of discharge to secure incriminatory evidence against an employee").

¶6   Following the hearing, the ALJ entered findings of fact and conclusions of law. The ALJ found that "Demill [was] a POST certified officer and at all times relevant to this case was working as a corrections officer for the [UDC]." The ALJ also found that "[i]n his interview with the [UDC] investigator, Demill spontaneously admitted to masturbating in a prison bathroom stall while at work sometime between 2016 and 2019." Based on these findings, the ALJ concluded that "[t]he charge that between 2016 and 2019, Demill violated Utah Code Ann. § 53-6-211(1)(e) by engaging in sexual conduct while on duty (masturbating in restroom) is proven by clear and convincing evidence."

¶7   In reaching this conclusion, the ALJ addressed two principal issues: first, whether Demill's admission was legally sufficient to support the conclusion under the clear and convincing evidence standard, and second, whether Demill's conduct violated Utah law. *See* Utah Code Ann. § 53-6-211(1)(e) (LexisNexis Supp. 2022) (stating that a peace officer's certification can be revoked "if the peace officer . . . engages in sexual conduct while on duty").

¶8 The ALJ first noted that he had not considered any independent evidence regarding Demill's admission because none had been submitted. The ALJ explained that he considered the credibility of Demill's admission under the trustworthiness standard adopted by *State v. Mauchley*, 2003 UT 10, ¶¶ 51–52, 67 P.3d 477, and ultimately determined that Demill's admission was credible.[4]

¶9 The ALJ next considered whether Demill's admitted conduct violated Utah law. *See* Utah Code Ann. § 53-6-211(1)(e). The ALJ undertook a two-part analysis considering, first, whether masturbation qualified as "sexual conduct," and second, if it did, whether Demill's sexual conduct occurred while he was on duty. The ALJ considered Demill's argument that the definition of sexual conduct in the applicable rule necessarily implied the involvement of two or more persons. Again, that rule defines "Sexual conduct," in relevant part, as "the touching of the anus, buttocks or any part of the genitals of a person . . . with the intent to arouse or gratify the sexual desire of any person regardless of

---

4. POST adjudication proceedings, like administrative proceedings in general, are civil in nature. *See* Utah Code Ann. § 53-6-211(3)(c) (LexisNexis Supp. 2022) ("All adjudicative proceedings under this section are civil actions, notwithstanding whether the issue in the adjudicative proceeding is a violation of statute that may be prosecuted criminally."). While Demill's statement about masturbating while on duty would appear to be readily admissible under Utah's rules of evidence, *see* Utah R. Evid. 801(d)(2)(A) (stating that a statement that "is offered against an opposing party and . . . was made by the party" is not hearsay), the ALJ, apparently out of an abundance of caution, nonetheless analyzed the admissibility of Demill's statement under *State v. Mauchley*, 2003 UT 10, 67 P.3d 477, which is normally used to establish the trustworthiness of confessions in criminal cases. The ALJ acknowledged that *Mauchley* "is based on criminal law and therefore not directly on point."

the sex of any participant." Utah Admin. Code R728-409-3(2)(f)(i). The ALJ concluded, "There is no language in this definition which, under a plain reading, cannot apply to either an individual alone and/or sexual conduct involving two or more persons." Based on that conclusion, the ALJ next considered whether Demill's activity could be regarded as having occurred while he was on duty. Because Demill admitted that his conduct took place in a staff restroom on Utah State Prison premises, the ALJ determined that Demill's conduct clearly occurred while he was on duty. *See id.* R728-409-3(2)(b)(iii) ("'On duty' means that a respondent is," among other things, "on the property of a law enforcement facility, correctional facility or dispatch center[.]"). Therefore, the ALJ concluded—based on Demill's own admission—that Demill had engaged in sexual conduct while on duty and had thus violated Utah law.

¶10 The ALJ next considered Demill's alternative legal argument regarding the propriety of the interview questions and whether they were sufficiently tailored and focused on "the conduct being investigated." The ALJ determined that because Demill volunteered his admission about masturbating while on duty, without being prompted, and because he was not questioned further by the interviewers about the conduct described in his admission, the interviewers' questions were not overly broad.

¶11 Finally, the ALJ addressed Demill's argument concerning the applicability of *Lawrence v. Texas*, 539 U.S. 558 (2003), specifically referred to in the applicable administrative rule, *see* Utah Admin. Code R728-409-4(2)(b), and whether Demill had a constitutional right to privacy under the circumstances. The ALJ explained that "the clear holding of [*Lawrence*] is not on point with the facts of this case" because that case "involves sexual conduct in the home—not the workplace," which "is not an insignificant difference and differentiates this case from the exception carved out by the reference to the *Lawrence* case in the administrative

rule." The ALJ noted the general lack of case law expanding the applicability of *Lawrence* to private places outside of the home and considered whether he could extend *Lawrence* to include privacy in a workplace setting, specifically a workplace restroom. The ALJ concluded that expanding the constitutional privacy rights recognized in *Lawrence* from the home context to a workplace restroom "are questions for the courts, not an administrative adjudication." The ALJ added that "[t]he limited purpose of this proceeding is for the ALJ 'to determine whether there is sufficient evidence to find that [Demill] engaged in conduct alleged in the Notice of Agency Action'" and whether that conduct was actionable. The ALJ noted that he had "no specific or implied grant of authority to extend the parameters of existing civil rights law or to declare statutes or rules unconstitutional." Thus, the ALJ did not further engage with Demill's constitutional argument.

¶12   Based on his analysis outlined above, the ALJ ultimately determined that POST proved by clear and convincing evidence that Demill had violated Utah law when he engaged in sexual conduct while on duty. The ALJ further ordered that Demill's case "should be placed on the next available agenda to be heard by the . . . Council." Following the issuance of the ALJ's order, Demill petitioned for permission to appeal the order to this court and moved to stay the Council's hearing of the matter pending the outcome of his petition. But Demill's petition was denied,[5] and his case was placed on the Council's agenda.

¶13   At the hearing before the Council, Demill appeared with his attorney. The Council accepted the ALJ's specific findings of fact and conclusions of law and sustained and adopted the ALJ's recommendation to suspend Demill's peace officer certification

---

5. Interlocutory review of non-final administrative decisions is not authorized by the Utah Rules of Appellate Procedure. *See* Utah R. App. P. 18.

for three and a half years. Demill then petitioned for judicial review.

## ISSUE AND STANDARD OF REVIEW

¶14 Demill raises one issue. He contends the ALJ and the Council erred in concluding that, in Utah, the authority to address constitutional issues is solely reserved for the courts. We apply the "correction-of-error standard," granting no deference to agency decisions in our review of general questions of law. *Associated Gen. Contractors v. Board of Oil, Gas & Mining*, 2001 UT 112, ¶ 18, 38 P.3d 291 (quotation simplified). "General questions of law include constitutional questions, rulings concerning an agency's jurisdiction or authority, interpretations of common law principles, and interpretations of statutes unrelated to the agency." *Id.* (quotation simplified).

## ANALYSIS

¶15 Demill asserts that "he has been substantially prejudiced" because the ALJ and the Council "erroneously interpreted or applied the law." *See* Utah Code Ann. § 63G-4-403(4)(d) (LexisNexis 2019). Demill's argument is premised on the Council's adoption of the ALJ's conclusion that "it is certainly outside the power of this administrative adjudication process to extend privacy rights into uncharted territory" and the ALJ's recognition that POST's administrative adjudication "is charged with determining the facts and making legal conclusions based on existing law" with "no specific or implied grant of authority to extend the parameters of existing civil rights law or to declare statutes or rules unconstitutional." The Council adopted the ALJ's findings of fact and conclusions of law in full—including the determinations that the ALJ did not have the authority to extend constitutional privacy rights under Utah law, that the extension of constitutional privacy rights beyond existing case law is

reserved for the courts, and that "the constitutional arguments of Demill are not considered and do not change the determination with respect to his guilt."[6]

¶16   We first consider the applicable procedural elements of POST's investigative and adjudicative processes, as described in the relevant administrative rules. *See* Utah Admin. Code R728-409-4, -5. With regard to investigative processes, POST "shall initiate an investigation when it receives information from any reliable source," *see id.* R728-409-4(1), that a peace officer has, among other things, engaged in sexual conduct while on duty, *see* Utah Code Ann. § 53-6-211(1)(e) (LexisNexis Supp. 2022). But POST is prohibited from investigating "conduct" that is "sexual activity protected under the right of privacy recognized by the United States Supreme Court in" *Lawrence*. *See* Utah Admin. Code R728-409-4(2). Based on the outcome of the investigation, POST can commence adjudicative proceedings "for the purpose of suspending or revoking a respondent's certification . . . by the filing of a Notice of Agency Action." *Id.* R728-409-6(1). "The purpose of an adjudicative proceeding is to determine whether there is sufficient evidence to find that the respondent engaged in the conduct alleged in the Notice of Agency Action by clear and convincing evidence and whether such conduct falls within the

---

6. We note that both parties highlight inconsistencies in our case law regarding whether the scope of an administrative proceeding extends to the adjudication of constitutional issues which have, in certain instances, been statutorily reserved for the courts under section 63G-4-403(4)(a) of the Utah Code. But because rule R728-409-4(2)(b) of the Utah Administrative Code specifically incorporates the constitutional protection in question, we have no occasion to consider the broader question of whether and to what extent—absent such a specific administrative rule—an administrative law judge in an administrative proceeding can properly address constitutional questions.

grounds for administrative action enumerated in Subsection[] 53-6-211(1)[.]" *Id.* R728-409-5(1).

¶17 Administrative rules also provide the authoritative boundaries for administrative law judges in adjudicative proceedings. *See id.* R728-409-13. Under those rules, "If the ALJ determines there is sufficient evidence to find that the respondent engaged in conduct in violation of Subsection[] 53-6-211(1) . . . , the ALJ's decision shall indicate that the matter will be heard at the next regularly scheduled council meeting." *Id.* R728-409-13(2). Conversely, "If the ALJ determines there is insufficient evidence to find that the respondent engaged in conduct in violation of Subsection[] 53-6-211(1) . . . the matter shall be dismissed." *Id.* R728-409-13(3). Therefore, an ALJ's authority in a POST administrative disciplinary proceeding is bookended by these rules and extends only to determining whether there is sufficient evidence "to find that the respondent engaged in conduct in violation of Subsection[] 53-6-211(1)," *id.*, and to indicate whether the matter will be heard by the Council or whether the matter will be dismissed. In the determination of whether there is sufficient evidence, an ALJ relies on existing law and "whether such conduct falls within the grounds for administrative action." *Id.* R728-409-5(1).

¶18 Demill argues that both the ALJ and the Council had the authority to rule on his argument that he had a constitutional right to privacy, which (as he sees it) included his right to masturbate while on duty so long as he did so in private. He contends that his POST certification should not have been suspended absent consideration of that argument.

¶19 Whether an ALJ has the authority to extend *Lawrence* to factual settings not discussed in that opinion presents a separate question. To that point, the applicable rule expressly addresses (and limits) the Council's authority regarding an adjudicative proceeding. *See id.* R728-409-14. In particular, "The council shall

consider the ALJ's findings of fact and conclusions of law in order to determine whether a letter of caution, or suspension or revocation of the respondent's certification is appropriate based upon the ALJ's findings and the POST Disciplinary Guidelines[.]" *Id.* R728-409-14(5). The subsection that follows addresses Demill's argument directly and expressly limits the Council's authority by providing, "The council does not have appellate review authority of the ALJ's findings of fact and conclusions of law." *Id.* R728-409-14(6). Therefore, the Council must accept the findings of fact and conclusions of law presented by the ALJ and must enter its disciplinary decision with reference to those facts and conclusions. Based on this statutory language, we focus the remainder of our consideration on the authority of the ALJ to expand the constitutional privacy right recognized in *Lawrence*.

¶20 As already noted, POST "may not investigate conduct that is limited to . . . sexual activity protected under the right of privacy recognized by the United States Supreme Court in Lawrence v. Texas, 539 U.S. 558 (2003)." *Id.* R728-409-4(2)(b). In *Lawrence,* police officers responded to a "reported weapons disturbance" at a private residence. 539 U.S. at 562. The officers entered the residence and saw Lawrence and another adult man engaging in sexual activity. *Id.* at 562–63. Both men were arrested and convicted of deviate sexual intercourse for engaging in sexual relations with a member of the same sex. *Id.* at 563. The United States Supreme Court reversed. In its decision, the Court held:

> Liberty protects the person from unwarranted government intrusions into a dwelling or other private places. In our tradition the State is not omnipresent in the home. And there are other spheres of our lives and existence, outside the home, where the State should not be a dominant presence. Freedom extends beyond spatial bounds. Liberty presumes an autonomy of self that includes

> freedom of thought, belief, expression, and certain intimate conduct.

*Id.* at 562. Demill argues that *Lawrence's* mention of "other private places" is applicable to his case and includes a staff restroom at a state correctional facility. But, as noted by the ALJ, Demill identifies no case that defines further or expands on the privacy right identified by *Lawrence*, i.e., the right to engage in consensual sexual conduct in a person's own home.

¶21    In considering the applicability of *Lawrence* to this case, the ALJ expressly recognized that "the [*Lawrence*] Court determined that homosexual conduct between consenting adults in a home is entitled to protection under the fundamental right to privacy." The ALJ determined that "the clear holding of the case is not on point with the facts of this case," noting that "[t]he holding of the *Lawrence* case involves sexual conduct in the home—not the workplace," which "is not an insignificant difference and differentiates this case from the exception carved out by the reference to the *Lawrence* case in the administrative rule." The ALJ also noted that "there appears to be no caselaw that identifies those 'other private places' and none which specifically assess the right to privacy in a workplace or workplace bathroom." The ALJ further recognized that Demill may have a constitutional right to privacy but noted "Demill is suggesting that the existing caselaw on privacy rights be extended to include workplace bathrooms" and "[t]hat is not an unreasonable request, and may be a winning argument, but it is certainly outside the power of this administrative adjudication process to extend privacy rights into uncharted territory."

¶22    We conclude the ALJ correctly determined that the privacy considerations in *Lawrence* were not presented here. Demill's actions occurred at his place of employment, a State correctional facility, and did not implicate a privacy interest of the sort that obtains when one is in one's own home. Further, although the ALJ

observed that Demill may have a good argument for an extension of the right to privacy beyond the context of sexual activity at home, Demill did not—and does not here—present any type of meaningful analysis of *Lawrence* or develop a substantial argument to demonstrate that the *Lawrence* doctrine has been or should be expanded to include workplace restrooms as having the same level of privacy protections as homes. Accordingly, we conclude the ALJ was correct and that the circumstances presented here are distinguishable from those in *Lawrence*.

¶23   We note that the relief Demill requests from this court is a remand to the Council, with an instruction to consider—or to direct the ALJ to consider—Demill's argument that the scope of the right recognized in *Lawrence* should be expanded to recognize a constitutional right to privacy that would protect public employees who masturbate at work, in a private setting, from disciplinary action. He does not ask this court to undertake that analysis and to interpret the applicable statute accordingly, and to then direct the Council to reinstate Demill's POST certification. He has not shown that in enacting rule R728-409-4(2)(b), POST's reference to *Lawrence* was meant to embrace a notion of privacy broader than the one specifically recognized in *Lawrence*, much less that the right has evolved to extend constitutional protection to private masturbation by a public employee at work. Accordingly, in the posture of this judicial review proceeding, we have no occasion to consider and resolve these issues.

CONCLUSION

¶24   The ALJ was correct that Demill's conduct was distinguishable from the conduct at issue in *Lawrence*. And without argument demonstrating that the privacy right recognized in *Lawrence* and included in the applicable administrative rule likewise extends to a workplace restroom, we decline to disturb the Council's order suspending Demill's peace officer certification.

———————