2009 UT 77

**James O. KENNON, and Dick Cumiskey, members of Save Our Air & Resources (SOAR), Petitioners,**

v.

**AIR QUALITY BOARD and Sevier Power Company, Respondents.**

**No. 20080042.**

Supreme Court of Utah.

Dec. 4, 2009.

---

James O. Kennon, Dick Cumiskey, petitioners pro se.

Mark L. Shurtleff, Att'y Gen., Fred G. Nelson, Paul McConkie, Christian C. Stephens, Asst. Att'ys Gen., Salt Lake City, for Air Quality Board.

Fred W. Finlinson, Saratoga Springs, James D. Gilson, Brian W. Burnett, Salt Lake City, for Sevier Power Company.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 James O. Kennon and Dick Cumiskey appeal the decision of the Utah Air Quality Board (the Board) denying their Request for Agency Action. The Request for Agency Action sought the invalidation of a 2004 approval order granted to the Sevier Power Company (the Power Company) because, Kennon and Cumiskey argued, the Division of Air Quality failed to revoke, or even adequately review, the approval order after the Power Company failed to commence construction within eighteen months of the date the approval order was granted.

## BACKGROUND

### I. THE APPROVAL ORDER AND THE GOVERNING REGULATIONS

¶ 2 On October 12, 2004, Richard W. Sprott, executive secretary (the Secretary) for the Division of Air Quality (the Division) issued an approval order, granting the Power Company a Prevention of Significant Deterioration (PSD) permit for its proposed 270 megawatt coal-fired power plant. At the time the approval order was granted, Utah Administrative Code rule 307–401–11 required that:

> Approval orders issued by the executive secretary in accordance with the provisions of R307–401 shall be reviewed eighteen months after the date of issuance to determine the status of construction.... If a continuous program of construction, ... is not proceeding, the executive secretary may revoke the approval order.

Utah Admin. Code r. 307–401–11 (2004).[1]

¶ 3 Similarly, paragraph 9 of the approval order required that if the executive secretary is notified that construction of the approved facility has not been completed within eighteen months from the date of the approval order, "the executive secretary shall require documentation of the continuous construction and/or installation of the operation and may revoke the AO in accordance with R307–401–11." Approval Order: Sevier Power Company's 270 MW Coal–Fired Power Plant, at 2 (Oct. 12, 2004).

¶ 4 Federal clean air regulations include a regulation parallel to the Utah eighteen-month requirement for construction to begin. See 40 C.F.R. § 52.21(r)(2) (2008). However, the federal regulation *automatically* invalidates approval to construct if construction is not commenced within eighteen months of the date the approval order is issued, and similarly requires that construction be completed within a reasonable time. *Id.* The federal regulations allow for an extension "upon a satisfactory showing that an extension is justified." *Id.*

### II. THE POWER COMPANY'S REQUEST

¶ 5 Thirteen months after the Secretary granted the approval order, the Power Company sent a letter to the Division explaining that ongoing litigation involving the Power Company's proposed plant had delayed con-

1. Renumbered to R307–401–18 in 2006. (making stylistic changes). *See* 23 Utah Bull. 14, 22 (Dec. 1, 2005).

struction and requesting the Division to "hold in abeyance" the running of the eighteen-month period in which the Power Company was required to begin construction. Without an extension, the eighteen month period would have expired April 12, 2006. The Division neither granted an extension nor revoked the order. *See* Letter from Richard W. Sprott, Executive Secretary, Utah Air Quality Board, to James O. Kennon (May 8, 2007).

## III. THE BOARD'S ACTIONS

¶ 6 Well over a year later, on April 4, 2007, during a Board meeting, the Board responded to a motion to dismiss that was part of a request for agency action filed by the Sierra Club separately from this case. In the motion to dismiss, the Sierra Club sought to invalidate the approval order, alleging that the executive secretary had failed to perform a mandatory eighteen-month review pursuant to rule 307–401–11 of the Utah Administrative Code. The Board denied the motion and instructed the Secretary to respond to the Power Company's November 2005 request to hold in abeyance the eighteen-month review period. The Board's determinations during the April hearing were memorialized in an order dated May 4, 2007.

¶ 7 On April 5, 2007, James Kennon inquired by letter whether an extension to the approval order had been granted to the Power Company, and if so, requested a reversal of the decision in order to receive public comment. On April 25, 2007, Mr. Kennon filed a GRAMA request for all records relating to a possible extension of the approval order. The Secretary responded on May 8, 2007 and explained that the Secretary had received a request from the Power Company to delay the beginning of the eighteen-month review period until all adjudications relating to the approval order, including any appeals, concluded. The Secretary indicated that he had reviewed this request at that time and determined that there was no persuasive reason for revoking the approval order, but did not issue a formal response. The letter concluded by stating that "no extension was required under the regulation, and none was granted." Letter from Richard W. Sprott,

Executive Secretary, Utah Air Quality Board, to James O. Kennon (May 8, 2007). Attached to the letter, the Secretary provided a copy of the Power Company's 2007 letter, the Board's May 4, 2007 order, and a copy of a handwritten Post-it note, which stated: "12/19/05 contacted Re: eighteen month Tech analysis."

¶ 8 On June 6, 2007, the Secretary sent a letter to the Power Company's legal counsel, explaining that the Division had reviewed the Power Company's request upon receipt of the November 2005 letter. The Secretary indicated that at that time "a decision was made not to revoke the Approval Order." Letter from Richard W. Sprott, Executive Secretary, Utah Air Quality Board, to Fred W. Finlinson (June 6, 2007). Explaining how that decision was reached, the Secretary indicated that "the matter was reviewed by New Source Review Engineer John Jenks, who in turn consulted with his supervisor.... They in turn consulted with me. Based upon this review, it was determined that no persuasive reason existed for revocation...." *Id.*

¶ 9 James O. Kennon and Dick Cumiskey, as individuals, and on behalf of the members of Save Our Air and Resources, filed a petition to intervene and a request for agency action on June 21, 2007. This petition challenged the June 2007 letter, arguing that the Secretary had not complied with condition 9 of the approval order and the relevant administrative rules. The Board consolidated its hearing on Kennon and Cumiskey's Request for Agency Action with the Sierra Club's Request for Agency Action.

¶ 10 The Board heard argument on October 1 and November 12, 2007. During the hearings, Kennon and Cumiskey argued that the approval order was invalid because (1) construction did not commence within eighteen months and federal law requires that approval orders automatically expire if construction has not begun within that time, and (2) the Board did not adequately conduct an eighteen-month review required by the Utah administrative rules because it did not conduct a new best available control technology (BACT) review and did not establish a new construction date.

¶ 11 The Board ruled on the issues during the hearings. On October 1, the Board ruled that the approval order did not automatically expire because the federal regulations were not applicable and the Utah regulations granted the executive secretary discretion to decide whether or not to revoke an approval order if construction had not commenced after eighteen months. Then, in November, the Board ruled that the Secretary conducted a proper review. In reaching this holding, the Board found that the Division review involved a consultation between Division staff and management and an informal comparison between the emission limitations imposed by the Power Company's permit and the PSD permits issued after the Power Company's. This review, according to the Secretary, indicated that the BACT assessments for the Power Company's facility were not outdated, and therefore there was no reason to revoke the Power Company's Approval Order. The only evidence of this review was the Post-it note provided in response to the records request and the general testimony of the Secretary and one of the Division's permit engineers. The engineer did not remember nor was there any written record of the permits the engineer reviewed in the informal comparison or the technology utilized by the permits used in the comparison.

¶ 12 The Board memorialized the October and November rulings in an order dated January 9, 2008. Kennon and Cumiskey appeal this order. We have jurisdiction pursuant to Utah Code sections 63G–4–403 (Supp. 2008) and 78A–3–102(3)(b) (2008).

**ISSUES AND STANDARD OF REVIEW**

¶ 13 Kennon and Cumiskey direct our attention to three issues: (1) whether the Board correctly determined that 40 C.F.R. § 52.21(r)(2) did not apply to the approval order, and thereby declined to find that Sevier Power Company's approval order automatically expired eighteen months after it was granted; (2) if the Board is required to follow only the Utah Administrative Code, whether the Board correctly interpreted and applied the state regulation to afford the executive secretary discretion over whether to revoke an approval order and to not re-quire an explicit extension or a new BACT review at the conclusion of eighteen months; and (3) whether the Division violated Kennon's and Cumiskey's due process rights by extending the approval order without allowing public comment on the issue.

¶ 14 We review the Board's determination of which regulation to apply and how to interpret that regulation under an intermediate standard in which we consider whether the Division's determination is rational. *Utah Chapter of the Sierra Club v. Utah Air Quality Bd.*, 2006 UT 74, ¶ 9, 148 P.3d 960 ("[W]hen we review questions of . . . '[the agency's] interpretation of the operative provisions of statutory law it is empowered to administer, [agency] findings must be rationally based and are set aside only if they are imposed arbitrarily and capriciously or are beyond the tolerable limits of reason.'" (second and third alterations in original) (quoting *Associated Gen. Contractors v. Bd. of Oil, Gas & Mining*, 2001 UT 112, ¶ 18, 38 P.3d 291)). We review the Board's determination of whether the Division's actions violated Kennon's and Cumiskey's due process rights for correctness. *See State v. Briggs*, 2008 UT 83, ¶ 11, 199 P.3d 935.

**ANALYSIS**

I. THE FEDERAL PSD PROGRAM REGULATIONS DO NOT APPLY TO THE POWER COMPANY'S PSD PERMIT

¶ 15 Kennon and Cumiskey argue that the federal regulations apply to Utah's new source permitting for two reasons. First, Utah has incorporated the federal regulations into its State Implementation Plan as evidenced by the approval of the Utah PSD program and 40 C.F.R. § 70.1. Second, they argue, Utah's State Implementation Plan cannot be interpreted in a manner that is less stringent than the federal regulations. Conversely, the Power Company argues that the federal regulations apply only when a state does not have an approved PSD program as part of their state implementation plan.

¶ 16 In a companion case issued today, *Utah Chapter of the Sierra Club v. Utah Air Quality Bd.*, 2009 UT 76, 226 P.3d 719 (*Sierra Club II* ), we addressed this argument in responding to the Sierra Club's identical claims. We held that the federal enforcement rule was not incorporated into Utah's State Implementation Plan in 2004. *Id.* Instead, as the legislative history of various federal regulations indicate, the EPA approved Utah's PSD program and removed operation of the entire federal PSD program from Utah in 1982. Further, because the EPA approved Utah's PSD program, we presumed that the EPA found Utah's enforcement rule to be sufficiently stringent. *Id.*[2] This understanding, however, imposes on the Division an obligation to interpret its rule in a way that achieves the same outcome as the federal enforcement rule—ensuring that the most current pollution controls are used in the construction of a major emitting source and avoiding unnecessary holds on increment limits that could be used by other facilities. With that holding in mind, we turn to whether the Division and Board properly interpreted rule 307–401–11, Utah's enforcement provision for all new construction permits, including the PSD permit.

## II. THE DIVISION MISAPPLIED UTAH'S PSD ENFORCEMENT RULE

¶ 17 Kennon and Cumiskey argue that the Division and Board misinterpreted rule 307–401–11, which was incorporated into the Power Company's approval order as condition 9. In particular, they argue that the Secretary does not have discretion to grant a plea in abeyance when construction has not begun. In the alternative, they argue that a formal review involving an entirely new BACT analysis and a period for public comment is required for the construction deadline to be extended. We treat each of their arguments in turn.

### A. Utah's Enforcement Statute Explicitly Grants the Secretary Discretion to Revoke a PSD Permit

¶ 18 Kennon and Cumiskey argue that condition 9 requires the Secretary to invalidate the approval order because the Power Company did not provide documentation of continuous construction, which the Secretary should have required. Further, they argue that neither Utah nor federal law give the Secretary authority to "hold in abeyance" a PSD permit. We disagree.

¶ 19 Condition 9 of the approval order does not require the Agency to revoke the approval order. Condition 9 of the Power Company's approval order states:

> If construction and/or installation has not been completed within eighteen months from the date of this AO, the Executive Secretary shall be notified on the status of the construction and/or installation. *At that time, the Executive Secretary shall require documentation of the continuous construction and/or installation of the operation and may revoke the AO in accordance with R307–401–11.*

Sevier Power Company, Division of Air Quality Approval Order (Oct. 12, 2004) (emphasis added).

¶ 20 Kennon and Cumiskey focus on the language "the Executive Secretary shall require" to argue that the approval order imposes an obligation on the Secretary to require documentation or otherwise invalidate the approval order. We acknowledge that the language of the approval order includes mandatory language relating to the requirement that documentation be secured. However, it clearly does not mandate an automatic revocation. Instead, the condition explicitly indicates that the Secretary has discretion as to whether or not to revoke an approval order. This is congruous with the requirements of rule 307, which is

---

**2.** Kennon and Cumiskey also suggest that Utah's rule violates the Supremacy Clause of the U.S. Constitution. This argument fails. "A claim under the Supremacy Clause simply asserts that a federal statute has taken away local authority to regulate a certain activity." *W. Air Lines, Inc. v. Port Auth. of N.Y. & N.J.*, 817 F.2d 222, 225 (2d Cir.1987). In this case, the Clean Air Act explicitly provides for states to regulate air pollution. Thus, Utah's enforcement regulation cannot violate the Supremacy Clause because it was adopted at the urging and approval of the federal government.

the source of obligations imposed on the agency. The approval order, in contrast, imposes duties on the Power Company, but cannot impose any additional duties on the Division, other than those already assigned by rule 307 and any other applicable federal and state laws. Therefore, we interpret any language in the approval order to reflect the obligations the Agency bears under rule 307 and nothing more.

¶ 21 The plain language of rule 307 grants the Secretary discretion to revoke a PSD permit or not to revoke a permit, the latter having the effect of granting an extension. Rule 307–401–11 states:

> Approval orders issued by the executive secretary in accordance with the provisions of R307–401 shall be reviewed eighteen months after the date of issuance to determine the status of construction, installation, modification, relocation or establishment. If a continuous program of construction, installation, modification, relocation or establishment is not proceeding, the executive secretary may revoke the approval order.

Utah Admin. Code r. 307–401–11 (2004). Just as the language in condition 9 allows discretion, rule 307–401–11 grants the Secretary discretion to revoke or not to revoke an approval order. *Id.* The use of "may," a permissive term, indicates the legislature's intent to provide the Secretary with discretion. *See State v. Wallace*, 2006 UT 86, ¶ 10, 150 P.3d 540. This determination, however, does not conclude our analysis of this phrase.

■ ¶ 22 In its order, the Board also held that this rule did not require modification of the permit, such as setting a new deadline for construction. This was in error. As we stated in *Sierra Club II*, the Board and Division are required to interpret their PSD regulations in a manner that achieves the purpose of the Clean Air Act's PSD program. 2009 UT 76, ¶ 21. Looking to the rule at issue, there is no explicit language regarding the grant of an extension or the creation of new deadlines. But it seems clear that, by not revoking an approval order at the end of a statutory deadline, the Secretary in effect granted an extension.

¶ 23 Kennon and Cumiskey argue that this extension should have included a new dead-line for construction. We agree; an open-ended extension is inconsistent with the underlying purpose of the state and federal PSD programs. Because the rule does not squarely address extensions and new dead-lines, we look to other provisions in rule 307–401 and the purpose of the PSD permit program to determine whether an open-ended extension was rational. *See Nemelka v. Ethics & Discipline Comm. of the Utah Supreme Court*, 2009 UT 33, ¶ 17, 212 P.3d 525. In describing what must be included in an application for an approval order, referred to in the rules as a notice of intent, rule 307–401–5(h) requires a schedule for construction. This and the eighteen-month period of the enforcement rule indicate an emphasis on timely construction of the facility. As explained by the EPA when discussing its parallel regulations, the purpose of such dead-lines is to ensure that PSD increments are not needlessly tied up and that the most current control technology is used by the facility. *In re: N.Y. Power Auth.*, 1 E.A.D. 825 (1983). The Board was obligated to interpret rule 307–401–11 in a manner that also achieves this purpose. We hold that it was not rational to conclude that an open-ended extension achieved such a purpose. Instead, by approving an extension without a new deadline for construction, the Board removed the incentive for the Power Company to timely construct the facility because, without a new deadline, the Power Company may hold on to their approval order for an indefinite amount of time. This would undoubtedly tie up the increment limits for emitting sources, that could be used by other entities seeking to build major emitting facilities. This outcome exceeds the limits of what would reasonably achieve the purpose of the enforcement statute and PSD permit program as a whole. Therefore, we reverse the Board on this narrow issue and remand for a determination of a proper deadline for construction of the Power Company's facility.

*B.  The Review Required by Rule 307–401–11 Must Be Performed in a Way That Achieves the Purpose of the PSD Program*

■ ¶ 24 Additionally, Kennon and Cumiskey argue that Utah's enforcement statute

requires a much more formal review than that engaged in by the Division. They contest that this review should follow the procedures adopted by the EPA Region IX office and include a fully documented and complete BACT review, including a period for public comment. The Sierra Club also asserted this argument in *Sierra Club II*. 2009 UT 76, ¶ 24.

¶ 25 We held in *Sierra Club II*, that rule 307–401–11 must be interpreted in a way that achieves the purpose of the PSD program. Additionally, as reflected in our discussion of whether a deadline is required under the enforcement rule, we look to the purpose of the rule when the plain language is not dispositive. *See id.* ¶ 23.

¶ 26 The plain language of rule 307–401–11 requires a review eighteen months after the issuance of an approval order. In this case, review should have taken place sometime near April 12, 2006. The language of the statute, however, does not describe the standards or procedures required for this review. As we discussed in *Sierra Club II*, the purpose of the enforcement rule is to ensure that the most current control technology is adopted. The agency has the discretion to select the best procedure to achieve this goal. The Board determined that the review allegedly completed by the Division satisfied the requirements of the state PSD program. There was not substantial evidence to support this conclusion.

¶ 27 The Power Company and the Board argue that Kennon and Cumiskey have failed to marshal the record in order to challenge the factual findings supporting the Board's approval of the review. We disagree. When challenging factual findings, a party is obligated to marshal "all record evidence that supports the challenged finding." Utah R.App. P. 24(a)(9). Kennon and Cumiskey marshaled the only evidence available to support the Board's findings—a photocopy of a Post-it note briefly recording the date December 19, 2005 and the phrase "contacted RE: eighteen month Tech analysis," and a letter from the Division indicating that a review had been completed. This evidence was identified in and attached to Kennon and Cumiskey's briefing.

¶ 28 As highlighted by the small amount of evidence Kennon and Cumiskey were able to identify in the record, there was very little evidence to support the Board's conclusion that the Division's review satisfied the requirements of Utah rule 307–401–11. A decision is supported by substantial evidence if there is a "quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion." *Associated Gen. Contractors v. Bd. of Oil, Gas & Mining*, 2001 UT 112, ¶ 21, 38 P.3d 291 (internal quotation marks and citations omitted). Here, both the amount and quality of evidence were inadequate. A record limited to a Post-it note indicating that someone was contacted regarding a review is woefully inadequate to convince a reasonable person that a review took place, let alone that the review was sufficiently rigorous to ensure that an approval order implemented the best control technology and would not tie up increment limits unnecessarily. The prefiled testimony of the Secretary and the permit engineer do not adequately bolster the barely existent written record. Instead, the testimony merely rehearsed that a review took place. When pressed as to the details of the review, the testifying parties were unable to provide any specifics, such as exactly how many or which permits were compared to that issued to the Power Company. Therefore, we conclude that the Board's decision was not supported by substantial evidence and remand to the Division to conduct and document a proper review.

## III. KENNON AND CUMISKEY DID NOT ADEQUATELY BRIEF THEIR ARGUMENT THAT THE DIVISION VIOLATED THEIR DUE PROCESS RIGHTS

¶ 29 Finally, Kennon and Cumiskey argue that their due process rights were violated because no public notice was given and no public comment was permitted regarding the decision to not revoke the approval order. We decline to address this argument because it was not adequately briefed. *See Angel Investors, LLC v. Garrity*, 2009 UT 40, ¶ 35, 216 P.3d 944 ("[W]e have discretion to not address an inadequate-

ly briefed argument."). The application of due process requires a thorough analysis of the circumstances and facts particular to a case. "The requirements of due process depend upon the specific context in which they are applied because 'unlike some legal rules due process is not a technical conception with a fixed content unrelated to time, place, and circumstances.'" *V–1 Oil Co. v. Dep't of Envtl. Quality*, 939 P.2d 1192, 1196 (Utah 1997) (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961)). In this case, Kennon and Cumiskey have not identified the private interest at stake, the risk of deprivation of that right, or the government interest at stake. For this reason, we decline to engage in such an analysis without the aid of argument from the parties.

### CONCLUSION

¶ 30 We conclude that federal rule 40 C.F.R. § 52.21(r)(2) did not apply to the Division's review of the Power Company's approval order. Instead, Utah rule 307–401–11 governs the enforcement of Utah's PSD program, which was approved by the EPA. This enforcement rule, as approved by the EPA, must be interpreted to achieve the same goals as the federal PSD program. These goals include ensuring that a new emitting source is constructed with the most current control technology and that a PSD permit for a new source does not tie up PSD increment limits unnecessarily. The Board failed to interpret the rule to achieve this goal when it approved the Division's decision to not revoke the Power Company's permit and to not apply a new deadline for commencement of completion of construction. Additionally, we conclude that the Board's determination that an adequate review was performed under rule 307–401–11 was not supported by substantial evidence when there was no written record of the review and the parties testifying regarding the review were unable to provide specific details of what was reviewed. Therefore, we reverse the Board on these two holdings and remand to the Division to conduct a proper review and set a reasonable deadline that serves the purpose of the PSD program.

¶ 31 Associate Chief Justice DURRANT, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM's opinion.