2020 UT App 70

# THE UTAH COURT OF APPEALS

IN RE ESTATE OF JOHN CLIFFORD HEATER

GINA MALLOUGH KIRKLAND,
Appellant,
*v.*
JOHN CARLON,
Appellee.

Opinion
No. 20180879-CA
Filed April 30, 2020

Second District Court, Farmington Department
The Honorable David M. Connors
No. 083700165

Brent D. Wride, Attorney for Appellant

Ben W. Lieberman, Attorney for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN M. HARRIS
concurred.

ORME, Judge:

¶1     Gina Mallough Kirkland challenges the district court's ruling that her half-brother, John Carlon, is an heir of their shared biological father's intestate estate. She argues that the court erroneously determined that Carlon could establish a parent-child relationship by means other than those prescribed by the Utah Uniform Parentage Act (the UUPA). She also contends that the court's order violates the one-set-of-parents rule because Carlon was already entitled to inherit from the man presumed to be his father under the UUPA. We hold that under the plain terms of Utah's version of the Uniform Probate Code (the Probate Code), the district court correctly concluded that

Carlon could establish a parent-child relationship with his deceased biological father irrespective of the UUPA. We further hold that the Probate Code does not support an extension of the one-set-of-parents rule to the situation presented in this case. Accordingly, we affirm.

## BACKGROUND

¶2    The facts of this case are not in dispute. John Clifford Heater died in 2008. He did not leave behind a will, and at that time, his only known heirs were one daughter, Kirkland, and one son (Brother). Over the next several years, the two siblings, whom the district court appointed as co-personal representatives, disputed the administration of Heater's estate. During this time, the court did not enter an order determining heirs.

¶3    In 2016, Brother reached out to Carlon via social media and informed him that he believed Heater was also Carlon's biological father. Carlon, who up until then had been unaware of Heater's passing, then moved to intervene in the probate action to "assert his right as an heir in this case." In conjunction with his motion, Carlon filed his own and his mother's affidavits. In her affidavit, Carlon's mother stated that she worked for Heater for fourteen years and that, during the relevant period, they had engaged in a sexual relationship, rendering it "probable that John Clifford Heater is the father of my son, John Carlon." And in his own affidavit, Carlon stated that "[t]hroughout my young life, . . . Heater acted towards me and my mother in a manner that was not consistent with merely an employer and employee." For example, while Carlon's mother was pregnant with Carlon, Heater took her to doctor appointments, purchased maternity clothes, and drove her to the hospital when the time of

delivery arrived.[1] Heater also paid for Carlon's live-in nanny for several years and sent Carlon birthday cards containing $100 checks well into Carlon's adulthood. Because of this, Carlon stated that "[w]hile I never knew for sure, I suspected for years that . . . Heater could be my father." Carlon also submitted DNA evidence that he and his mother's other son, whom he had previously believed to be his full brother, did not share the same biological father. Carlon also stated in his affidavit that, according to genetic testing done through Ancestry.com, he is closely linked to individuals who shared the same last name as Heater's mother.

¶4     Despite Kirkland's vigorous opposition,[2] the district court granted Carlon's motion so that it could determine whether he is Heater's biological son and, if so, whether he is entitled to inherit from the estate. The parties addressed the latter issue first. Kirkland, among other things, argued that Heater "does not meet the definition of a parent under the Probate Code" for Carlon because his mother was married to someone other than Heater at the time of Carlon's birth and her husband, who raised Carlon, was therefore his presumptive father under the UUPA.[3]

---

1. Obviously, Carlon was not a witness to these events before his birth, and it is odd that they were recounted by him instead of by his mother. *Cf.* Utah R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge."). But there was no motion to strike his affidavit, and it was accepted by the court.

2. Brother did not oppose Carlon's intervention in the probate case or the court's eventual determination that Carlon is an additional heir of Heater's estate.

3. Citing *In re Estate of Hannifin*, 2013 UT 46, 311 P.3d 1016, Kirkland also argued that because "Carlon cannot inherit from

(continued…)

*See* Utah Code Ann. § 78B-15-204(1)(a) (LexisNexis 2018)[4] ("A man is presumed to be the father of a child if . . . he and the mother of the child are married to each other and the child is born during the marriage . . . .").

¶5      The court rejected this argument. Relying on section 2-114 of the Probate Code, which provides that "[t]he parent and child relationship" for purposes of intestate succession "*may* be established as provided in [the UUPA]," *id.* § 75-2-114(1) (Supp. 2018) (emphasis added), the court concluded that "[t]he UUPA has no implication as to whether, in this probate action, . . . Carlon can establish that he is actually a child of . . . Heater for purposes of intestate succession." In other words, the court held that "Carlon can establish the parent-child relationship contemplated in section 114 irrespective of whether he could do so under the UUPA."

¶6      Following the court's order, Carlon filed a motion for partial summary judgment seeking a determination that Heater was his biological father. In support of his motion, he provided the court with DNA evidence establishing a 99.99% certainty

---

(…continued)

two sets of parents," and he already "has legally established parents . . . from whom he is entitled to inherit," i.e., his mother and her husband, "he is precluded as a matter of law from also simultaneously inheriting from [Heater] as his alleged parent." The district court did not address this argument in its order.

4. Because the statutory provisions in effect at the relevant time do not differ in any way material to our analysis from those now in effect, we cite the current version of the Utah Code for convenience.

that he and Brother were half-brothers.[5] And in the absence of a meaningful challenge to the DNA evidence, the district court granted Carlon's motion, determining that "Carlon is the biological son of . . . Heater." The court later entered an "Order Determining Heirs," naming Brother, Kirkland, and Carlon as heirs of Heater's estate.

¶7     Kirkland appeals.


ISSUES AND STANDARD OF REVIEW

¶8     Kirkland argues that the district court erred in two respects: (1) it incorrectly determined that the UUPA was not the exclusive manner by which one could establish a parent-child relationship for purposes of intestate succession, and (2) it ignored the one-set-of-parents rule. These issues raise questions of statutory interpretation, which we review for correctness. *See Metropolitan Water Dist. v. SHCH Alaska Trust*, 2019 UT 62, ¶ 9, 452 P.3d 1158.


ANALYSIS

I. Exclusivity of the UUPA

¶9     Section 2-114 of the Probate Code provides that "for purposes of intestate succession by, through, or from a person, an individual is the child of the individual's natural parents, *regardless of their marital status*." Utah Code Ann. § 75-2-114(1) (LexisNexis Supp. 2018) (emphasis added). It further states that "[t]he parent and child relationship *may* be established as provided in [the UUPA]." *Id.* (emphasis added).

---

5. Although Kirkland refused to submit to genetic testing, it was uncontested that Brother is Heater's biological son.

¶10    Kirkland argues that "the district court . . . erred in holding that compliance with the [UUPA] is optional." She directs our attention to provisions of the UUPA that state that "[a] man is presumed to be the father of a child if . . . he and the mother of the child are married to each other and the child is born during the marriage," *id.* § 78B-15-204 (1)(a) (2018), and that the presumption "may only be rebutted in accordance with [section 607 of the UUPA]," *id.* § 78B-15-204(2). Kirkland then contends that the court erred by "not acknowledg[ing] the clear statement in the [UUPA] that the 'only' way to rebut the presumption of paternity is through section 607" and instead "rel[ying] exclusively on the Probate [Code]" without "attempt[ing] to harmonize the two related acts and to give application to them both."

¶11    We conclude that Kirkland's reliance on the UUPA is misplaced. The UUPA expressly states that "a parent-child relationship established under this chapter applies for all purposes, except as otherwise specifically provided by other law of this state." *Id.* § 78B-15-203. Thus, the UUPA, by its own terms, is subordinate to other statutes that provide their own definition of a parent-child relationship for specific purposes. The Probate Code, at least as concerns intestate succession, is one such statute.

¶12    The Probate Code provides that a decedent's "entire intestate estate[,] if there is no surviving spouse, passes" first "to the decedent's descendants per capita at each generation." *Id.* § 75-2-103(1)(a) (Supp. 2018). The Probate Code further defines "Descendant" as "all of [the decedent's] descendants of all generations, with the relationship of parent and child at each generation being determined *by the definition of child and parent contained in this title.*" *Id.* § 75-1-201(9) (emphasis added). Then, specifically addressing the parent-child relationship for intestate succession purposes, the Probate Code provides that "an

individual is the child of the individual's natural parents, *regardless of marital status*."[6] *Id.* § 75-2-114(1) (emphasis added).

¶13    The Probate Code's discounting of the marital status of a child's parents is in direct conflict with provisions of the UUPA that turn directly on marital status, namely those that create a legal presumption of fatherhood for the husband of the child's biological mother.[7] *See id.* § 78B-15-204(1) (2018). And where the

---

6. The Probate Code defines "Parent" as "any person entitled to take, or who would be entitled to take if the child died without a will, as a parent under this code by intestate succession from the child whose relationship is in question and excludes any person who is only a stepparent, foster parent, or grandparent." Utah Code Ann. § 75-1-201(33) (LexisNexis Supp. 2018). It also defines "Child" as "any individual entitled to take as a child under this code by intestate succession from the parent whose relationship is involved and excludes any person who is only a stepchild, a foster child, a grandchild, or any more remote descendant." *Id.* § 75-1-201(5).

7. For this same reason, we also reject Kirkland's contention that the district court erred in interpreting the term "natural parent" in section 2-114 to mean a child's biological parent but not the child's presumptive parent under the UUPA. Although the Probate Code defines the term "Parent," *see* Utah Code Ann. § 75-1-201(33) (LexisNexis Supp. 2018), it does not define "natural parent." Kirkland argues that "[i]n context, it is apparent that the term natural parent was used in section 2-114 simply as a term that means non-adoptive parent" rather than biological parent. But subsection (1) of section 2-114 directly conflicts with Kirkland's contention that the term "natural parent" includes presumptive parents. Subsection (1) provides that "an individual is the child of the individual's natural parents, *regardless of marital status*." *Id.* § 75-2-114(1) (emphasis

(continued…)

two acts conflict, under the express provisions of the UUPA, *see id.* § 78B-15-203, the Probate Code's definition of the parent-child relationship for intestate succession purposes is the definition that directly applies to the determination of whether Carlon is an heir of Heater's intestate estate. Accordingly, we apply the Probate Code's definition, not the UUPA's, in reviewing the district court's order.

¶14   Kirkland also contends that the district court erred in relying on the word "may" in subsection (1) of section 2-114 of the Probate Code to conclude "that compliance with the [UUPA] was optional." *See id.* § 75-2-114(1) (Supp. 2018) ("The parent and child relationship may be established as provided in [the UUPA]."). Instead, Kirkland argues that subsection (1) "deals with illegitimate children who are born in cases in which there is no marriage," which is not the case here because "Carlon was not illegitimate, and there *was* a marriage," i.e., he was born into the marriage of his mother and her husband. Kirkland further contends that "[t]he proper way to read section 114 (and the way that harmonizes and gives effect to all of the statutory provisions) is to read it as applying to illegitimate children and as stating that—if they wish—such children may establish a parent-child relationship."

¶15   But section 2-114 does not support such a limited application of its definition of the parent-child relationship. Instead, by its plain terms, the section provides generally that

---

(…continued)

added). Because the provision expressly renders the natural parents' marital status irrelevant, the term "natural parents" cannot include a child's presumptive parents because the presumption under the UUPA is entirely based on the parents' marital status. *See id.* § 78B-15-204(1) (2018). Accordingly, a child's "natural parent" is the child's biological/genetic parent.

"for purposes of intestate succession[,] . . . an individual is the child of the individual's natural parents, regardless of their marital status." *Id.* The section includes no language limiting its definition of the parent-child relationship to illegitimate children, as Kirkland contends. Thus, our Legislature's use of the word "may" when referencing the UUPA's role in establishing a parent-child relationship, by the plainest of terms, permits the application of the UUPA in appropriate cases rather than establishing it as the exclusive means by which to establish the relationship. *See id.* § 68-3-12(1)(g) (2016) (stating that, when used in a statute, the word "may" "means that an action is authorized or permissive"). *See also May*, Black's Law Dictionary 1127 (10th ed. 2014) (defining "may" as "[t]o be permitted" or "[t]o be a possibility"); *May*, New Oxford American Dictionary 1082 (3d ed. 2010) (same).

## II. The One-Set-Of-Parents Rule

¶16   Citing *In re Estate of Hannifin*, 2013 UT 46, 311 P.3d 1016, Kirkland contends that the district court erred in not addressing the one-set-of-parents rule. In *Hannifin*, the district court determined that a nonbiological child, whom the decedent had not legally adopted but had nonetheless raised and treated as his own son, was an heir of the decedent's intestate estate under the doctrine of equitable adoption. *Id.* ¶¶ 1, 4–7. Our Supreme Court reversed, holding that the Probate Code preempted the doctrine. *See id.* ¶¶ 15–16. In reaching this conclusion, the Court, in part, relied on subsection (2) of section 2-114 of the Probate Code, which provides that, for purposes of intestate succession, "[a]n adopted individual is the child of the adopting parent or parents and not of the natural parents." Utah Code Ann. § 75-2-114(2) (LexisNexis Supp. 2018). *See Hannifin*, 2013 UT 46, ¶¶ 19–26. The Court stated that "the statute establishes a one-set-of-parents inheritance rule" in that it "operates to prohibit adopted children

from taking by intestacy from both their natural parents and their adoptive parents."[8] *Hannifin*, 2013 UT 46, ¶¶ 22, 26 n.9. And because "equitable adoption treats an equitable adoptee as one entitled to inherit from a decedent as though she were the biological or adopted child of the decedent without cutting off inheritance rights from actual biological or adoptive parents," it conflicted with the statutory one-set-of-parents rule. *Id.* ¶ 26 n.9. Accordingly, the Probate Code statutorily preempted the judicially created doctrine of equitable adoption. *Id.* ¶ 26.

¶17    Kirkland argues that the one-set-of-parents rule precludes Carlon from inheriting from Heater because Carlon was already entitled to inherit from his presumptive father—with whom Carlon had "never sought to dissolve or disclaim his filial relationship," and who predeceased Heater. Kirkland asserts that, under the rule, Carlon "cannot *also* be the descendant and heir of Heater." We disagree.

¶18    Kirkland essentially argues that the one-set-of-parents rule applies beyond the adoption context. But we do not read *Hannifin* as broadly as Kirkland does. As an initial matter, the one-set-of-parents rule is not a judicially created doctrine. To the contrary, our Supreme Court discussed the rule specifically because the statute conflicted with the judicial doctrine of equitable adoption, thereby preempting it. *See id.* ¶ 13 ("We find the [Probate] Code to displace the doctrine of equitable adoption . . . ."). For that reason, we turn exclusively to the plain language of the Probate Code to determine whether the rule should apply to a circumstance beyond the one addressed in

---

8. Although our Supreme Court at times used language that, when read in isolation, could be construed to suggest a broader application of the rule, *see, e.g.*, *In re Estate of Hannifin*, 2013 UT 46, ¶¶ 24–26 & n.9, 311 P.3d 1016, it relied entirely on the text of subsection (2) in its articulation of the rule.

*Hannifin*. *See Timothy v. Pia, Anderson, Dorius, Reynard & Moss, LLC*, 2019 UT 69, ¶ 22, 456 P.3d 731 (stating that "[w]hen interpreting a statute, our primary objective is to ascertain the intent of the legislature," the best evidence of which "is the plain language of the statute itself") (quotation simplified). And Kirkland acknowledges that subsection (2)—the provision on which the *Hannifin* court relied—is inapplicable in the case at hand. Accordingly, *Hannifin* is of limited relevance to our analysis and we instead turn to the Probate Code for guidance.

¶19    "We will not infer substantive terms into the text that are not already there. Rather, the interpretation must be based on the language used, and we have no power to rewrite the statute to conform to an intention not expressed." *Associated Gen. Contractors v. Board of Oil, Gas & Mining*, 2001 UT 112, ¶ 30, 38 P.3d 291 (quotation simplified). And here, Kirkland has not directed us to any statutory language suggesting that the one-set-of-parents rule is applicable where the decedent is a descendant's biological—but not legal—parent.[9] Rather, the

---

9. Instead, Kirkland argues that "the principles supporting the one-set-of-parents inheritance rule apply with equal force here." This argument invokes Utah Code section 75-1-102, which provides that the Probate Code "shall be liberally construed and applied to promote its underlying purposes and policies," Utah Code Ann. § 75-1-102(1) (LexisNexis Supp. 2018), which, among other things, are

> (a) To simplify and clarify the law concerning the affairs of decedents, missing persons, protected persons, minors, and incapacitated persons;
> (b) To discover and make effective the intent of a decedent in distribution of his property;
> (c) To promote a speedy and efficient system for administering the estate of the decedent and making distribution to his successors[.]

(continued…)

plain language of the statute—that "[a]n adopted individual is the child of the adopting parent or parents and not of the natural parents," Utah Code Ann. § 75-2-114(2)—limits the rule to the adoption context. But even then, the rule does not universally apply to all adoptions. For example, in defining the parent-child relationship for purposes of intestate succession, subsection (2) in its entirety provides: "An adopted individual is the child of the adopting parent or parents and not of the natural parents, but adoption of a child by the spouse of either natural parent has no effect on the relationship between the child and that natural parent." *Id.* The one-set-of-parents rule therefore does not apply to situations where a stepparent adopts a child. Our Legislature has likewise provided that the rule does not extend to children of parents whose parental rights have been terminated. *See id.* § 78A-6-513(1) (2018) ("An order for the termination of the parent-child legal relationship divests the child and the parents of all legal rights, powers, immunities, duties, and obligations with respect to each other, except the right of the child to inherit from the parent."). Therefore, by the statute's plain terms, the one-set-of-parents rule is not a universal principle governing intestate succession. And absent statutory language extending the rule beyond certain adoption scenarios, we cannot conclude that the rule applies to this case, which does not feature an adoption of any sort.

¶20    While the conclusion that a child may inherit from both his presumptive and biological fathers' intestate estates certainly seems bizarre, or at least at odds with societal expectations, the plain language of the Probate Code dictates this conclusion. *See*

---

(…continued)

*Id.* § 75-1-102(2). But even when "liberally construed and applied," the plain language of the Probate Code does not support the extension of the one-set-of-parents rule to the present situation.

*DeLand v. Uintah County*, 945 P.2d 172, 174 (Utah Ct. App. 1997) ("Unless a literal reading would render the statute's wording unreasonably inoperable or confusing, we . . . do not look beyond plain and unambiguous language to ascertain legislative intent.") (quotation simplified). It is worth noting, however, that the Uniform Law Commission has subsequently revised the Uniform Probate Code (the UPC), making changes not yet adopted by our Legislature, which address this exact situation. While the UPC similarly provides that "a parent-child relationship exists between a child and the child's genetic parents, regardless of the parents' marital status," Unif. Probate Code § 2-117 (Unif. Law Comm'n 2010), it further provides, under its definition of "Genetic father," that "[i]f the father-child relationship is established under the presumption of paternity under [the UUPA], the term means only the man for whom the relationship is established," *id.* § 2-115. If this statutory scheme were in effect in Utah, Kirkland would clearly prevail because the UPC, unlike the Probate Code, provides that where a child has a presumed father under the UUPA who is not the child's biological father, the presumptive father is the child's only father for purposes of intestate succession. This approach concededly comports with logic and societal norms. But even though this revision of the UPC has been available for at least ten years, our Legislature has not seen fit to adopt it.[10] As explained above, the version of the Probate Code adopted by our Legislature does not include a definition of genetic (or natural) father and thus does not support such an outcome. Therefore, Carlon, as the biological son of Heater, may receive his intestate share from Heater's estate.

---

10. The legislatures of at least three states have adopted the UPC's definition of "Genetic father." *See* Colo. Rev. Stat. § 15-11-115(5) (2010); Minn. Stat. § 524.1-201(22) (2016); N.D. Cent. Code § 30.1-04-14(5) (2009).

CONCLUSION

¶21    Based on a plain reading of section 2-114 of the Probate Code, the UUPA is not the exclusive means by which a party may establish a parent-child relationship for purposes of intestate succession, nor does the one-set-of-parents rule apply in a non-adoption setting where a child has different biological and presumptive fathers.

¶22    Affirmed.

_____